**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) Criminal Number: 3:20CR78-HEH |
| | ) |
| **MATTHEW FREZZA,** | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

**DEFENDANT'S POSITION ON SENTENCING**

Regarding Late Filing: Counsel for Mr. Frezza had sent a copy of the report to Mr. Frezza at Pamunkey Regional Jail after it issued. However, communications with inmates at Pamunkey has been subject to ongoing outages. Attempts to communicate with Mr. Frezza about the report were unsuccessful; the United States Marshals were able to bring Mr. Frezza to the courthouse yesterday, November 8, 2020, in order to meet with the undersigned. Therefore counsel asks that the Court excuse the late filing. Counsel and Mr. Frezza do not object to any continuance should the Court or parties request time to respond.

The guideline range in this case is 46 to 57 months. However, Mr. Frezza requests a sentence of 24 months as sufficient but not greater than necessary under the § 3553(a) factors, for three reasons. First, Mr. Frezza's history of mental health problems going back to age 4, compounded by abuse he suffered, led to his subsequent drug addiction and felony status. Second, his record shows significant periods of self-motivated recovery from his heroin addiction, and he was not a user of drugs at the time of this offense. Third, the circumstances of the instant offense

1

show no danger to the public. The sentencing guidelines in this case overestimate the risk of danger and recidivism given Mr. Frezza's unique circumstances.

      **A.**      **Matthew Frezza's History and Characteristics**

           *1.*      *Childhood, in which Matthew attempts suicide for the first time at age 8, is horrifically abused, and copes at age 12 with alcohol and drugs.*

Matthew was diagnosed with bipolar disorder at age 4; his parents put him in therapy and he was on medication. Exhibit 1 (letter from Mary Nemschick). He tried to hang himself at age 8, ran in front of a car at age 12, and was hospitalized for it. He was also subjected to horrific abuse. PSR ¶ 70. Although he was on medication, the mental health problems and trauma of abuse were better relieved, Mr. Frezza found at age 12, when he started using alcohol and drugs to cope. PSR ¶ 81.

In a better world, this would be a unique story. Sadly, this pattern is common enough that studies have confirmed it with broad statistics. The Substance Abuse and Mental Health Services Administration (part of the Department of Health and Human Services) has published a summary of such studies. Exhibit 2. Children who suffer an adverse childhood experience (which seems to be an understatement for what Matthew experienced with his mental health problems, poverty, and abuse he suffered) begin using alcohol at an early age, *id*. at 2; use drugs at an early age, *id*. at 3; and attempt suicide more frequently. *Id*. So Mr. Frezza's misguided methods, as a child, of trying to cope with his mental problems and forget the abuse he suffered are not unique.

These facts are relevant to Mr. Frezza's moral culpability and the need to punish and promote respect for the law. "All men are created equal," it is true, but not all men are diagnosed with severe mental diseases at age 4 or attempt suicide at age 8. Mr. Frezza cannot be blamed for starting life with these challenges. And if he had started using drugs as an adult, with awareness of the consequences, he would shoulder responsibility for that; but his decision as a child to cope

2

with the voices in his head and the memory of his horrific abuse with drugs is also not seriously blameworthy. And when Mr. Frezza finally, as an adult, took the reins and tried to recover, he showed remarkable success.

    2. *Mr. Frezza finally takes control of his life, with some setbacks but remarkable progress*

Mr. Frezza's criminal history, when charted out by year from age 18, shows quite clearly his periods of sobriety and when he had trouble coping with his childhood-derived addiction and mental health problems:

2001: damaging a public building (misd.), PSR ¶34 (age 18)

2002: obtaining money by false pretenses (misd.), PSR ¶35 (age 19)

2003: none

2004: none

2005: none

2006: none

2007: none

2008: none

2009: none

2010: none

2011: point/brandish firearm (misd.) PSR ¶ 36; dog at large, PSR ¶ 37

2012: none

2013: assault/battery (misd.), PSR ¶ 38; petit larceny, PSR ¶ 39; FTA, PSR ¶ 40

2014: Probation violation, PSR ¶ 41; shoplifting etc., PSR ¶ 42; larceny 3rd, etc. PSR ¶ 43;

2015: none

2016: traffic-related misdmeanors FTA x3, PSR ¶¶ 44-45, 47-49; trespassing, PSR ¶ 47.

3

2017:  none

2018:  none

2019:  none

2020:  instant offense

This history lines up remarkably with Mr. Frezza's substance abuse history, PSR ¶ 81. He quit using most drugs at age 19, beginning a period from 2002 to 2011 with no convictions. PSR ¶ 81. He began using pain pills at age 30 and switched to heroin after. *Id.* This lines up exactly with his convictions in 2013 and 2014, and the felony which barred him from possessing a firearm. In short, Mr. Frezza's disenfranchisement derives from one brief period at age 30 when his use of drugs to cope with a serious mental health problem and childhood trauma. His conduct since then has been good. He has been clean since 2016, attending narcotics anonymous[1] meetings up until the week before his arrest. PSR ¶ 81.

What this shows is a man making serious efforts on his own to overcome his addiction and trauma, and despite setbacks, largely succeeding. A significant term of imprisonment is not necessary to motivate Mr. Frezza to conform to the law; he has shown independent resolve to do that on his own.

  B.  **The Nature and Circumstances of the Offense**

Mr. Frezza was a passenger in a car with other members of a group. PSR ¶¶ 8.3; 10. A *different* car in the group struck a bicycle causing a protestor to fall down. PSR ¶ 10. Law enforcement officers stopped all three of the cars far from the scene. PSR ¶ 8.2. Mr. Frezza and

---

[1] Mr. Frezza is in continuous contact with his NA sponsor; but his sponsor requested not to be involved in the instant case to maintain confidential his own past problems and recovery.

all of the other occupants of the car were peaceful, surrendered their firearms as requested, and remained calm while waiting over an hour for officers to resolve the situation.[2]

Unlike many firearms defendants in federal court, Mr. Frezza and his compatriots were not engaged in drug dealing, violence, or intimidation when arrested. In fact, all of the other occupants of the car, similarly armed, were allowed to leave the scene with their weapons. They were at the scene, in fact, as even the officers at the traffic stop acknowledge, to assist law enforcement and prevent violence.

To be clear, Mr. Frezza did not and does not oppose the right of people peaceably to assemble and petition the government for redress of grievances. His concern was that people who want to use violence would use those peaceful protests as cover. As was all over the news at that point, some cities in the United States had essentially abandoned their citizenry to the control of people who violently resisted law enforcement. In Seattle, for example the city sanctioned a law-free zone in which five people were shot in the weeks that police abandoned the area. The mother of one teenager murdered within a city-sanctioned autonomous zone has sued Seattle, after the died lying bleeding on the street for 20 minutes while paramedics waited for a police escort to enter the zone. https://www.bbc.com/news/world-us-canada-53491223

Such a thing was difficult to imagine in the United States until recently; but the fact that it happened makes the fear of Mr. Frezza and his compatriots reasonable. And in fact officers at the scene expressed sympathy and thanks to them for their desire to support law enforcement, and only cautioned them about diverting resources before releasing the rest of the car's occupants.

---

[2] Despite having, as the officer at the scene stated on body camera footage, "zero PC to stop them."

5

Second, Mr. Frezza at the scene asked to speak to an officer privately and voluntarily and preemptively confessed that he was not allowed to possess a firearm.

In sum, this is not a case such as the court typically sees, where an individual runs or flees, or is caught with a gun and drugs, while committing or suspected of committing other crimes. Mr. Frezza regrettably let his fear of anarchy and chaos overcome his better judgment. But his particular possession of the firearm in this case under these circumstances was not remotely violent or connected to any other crime. Therefore the nature and circumstances of the offense likewise counsel for a below-guidelines sentence.

Respectfully Submitted,
Matthew Frezza.

By:       /s/
Counsel

Joseph S. Camden
Va. Bar No. 92143
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0830
Fax (804) 648-5033
joseph_camden@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to:

Choose an item.
US Attorney Office (Richmond)
SunTrust Building
919 East Main Street
Suite 1900
Richmond, VA 23219

US Attorney Office (Richmond)
SunTrust Building
919 East Main Street
Suite 1900
Richmond, VA 23219

/s/_____
Joseph S. Camden
Va. Bar No. 92143
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0830
Fax (804) 648-5033
joseph_camden@fd.org